U.S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 05 2008

Chris R. Johnson, CLERK

BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

DR. HARVEY BILLIG AND AL FERRY                          PLAINTIFFS

VS.                              CASE NO. 08-6021

DR. RON A. KALER; DR. ROBERT J. OLIVE, JR.;
DR. GREGORY SCOTT SLAGLE; DR. R. TIMOTHY
WEBB; DR. ALLEN GERBER; DR. FRED DAY;
DR. STEPHEN L. BODEMANN; DR. MICHAEL
BODEMANN; DR. DONALD R. BODEMANN;
DR. MICHAEL J. YOUNG; DR. ISAAC RODGERS;
DR. JEFFREY W. HERROLD; DR. JOHN W.
SORRELLS; DR. PHILLIP WOODWARD;
DR. GARY MEEK; DR. CHARLES C. WRIGHT;
DR. DIANNE BODEMANN                                     DEFENDANTS

## COMPLAINT

### Introduction

1.     The Plaintiffs, Dr. Harvey Billig ("Billig") and Al Ferry ("Ferry") own minority membership interests in Medical Service Center of Hot Springs, LLC ("MSC"). The Defendants (collectively the "Hot Springs Doctors") collectively own the majority of the membership interests in MSC. This is a complaint to recover damages and loss suffered by Billig and Ferry as minority members of MSC. The damages and loss suffered by Billig and Ferry resulted from the self-dealing, oppression, breach of duties and violation of Arkansas law by the Hot Springs Doctors who are the majority members of MSC.

### Parties, Jurisdiction and Venue

2.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332.

3.     This Court has personal jurisdiction over the parties to this action.

4. Billig is a citizen and resident of the State of California. Ferry is a citizen and resident of the State of Arizona. The Hot Springs Doctors are citizens and residents of the State of Arkansas. The amount in controversy in this case is in excess of $75,000.00.

5. Venue is proper in this Court because the events giving rise to the claims stated herein occurred in this jurisdiction.

## Formation and Control of MSC

6. MSC is an Arkansas limited liability company. MSC was formed in December, 1999.

7. MSC was formed for the purpose of purchasing real property and building a medical facility in Hot Springs, Arkansas. MSC did, in fact, purchase real property and construct a 20 bed acute care hospital facility in Hot Springs (the "Facility"). The members of MSC contemplated that, after construction, the Facility would be leased to the Hot Springs Doctors so that the Hot Springs Doctors could conduct their medical practices at the Facility.

8. The original members of MSC were Billig, Ferry, the Hot Springs Doctors and two other persons, John Klinowski ("Klinowski") and Dr. Robert Bell ("Bell"). Upon information and belief, the Hot Springs Doctors (or an entity controlled by them) subsequently purchased the membership interests of Klinowski and Bell in MSC. Although Billig is a doctor by education and training, he is not a practicing physician and did not conduct a medical practice with the Hot Springs Doctors or at the Facility.

9. The members of MSC entered into an initial operating agreement when MSC was formed, but after completion of construction of the Facility the members of MSC entered into an Amended and Restated Operating Agreement dated as of January 1, 2002 (the "Operating Agreement"). A copy of the Operating Agreement is attached hereto as Exhibit A. As set forth

in the Operating Agreement, Billig owns 15% of MSC and Ferry owns 15% of MSC. The Operating Agreement established a four (4) person Management Committee. In addition to controlling MSC by owning a majority of the membership interests in MSC, the Operating Agreement allowed the Hot Springs Doctors to further control MSC by providing for the election of three (3) members of the Management Committee by the Hot Springs Doctors. After entering into the Operating Agreement, Dr. Ron Kaler, Dr. Isaac Rodgers and Dr. Michael J. Young were elected to the Management Committee by the Hot Springs Doctors. The Hot Springs Doctors subsequently replaced Dr. Rodgers and Dr. Young with Dr. Phillip Woodward and Dr. John Sorrells. At all times the Hot Springs Doctors controlled the Management Committee. Billig served as the fourth member of the Management Committee.

### Self-Dealing Related To The Hospital Facility Lease

10. As originally contemplated, 54,000 square feet of the Facility was leased to the Hot Springs Doctors. The Hot Springs Doctors formed a corporation named Ouachita Regional Diagnostic Surgery Center, Inc. ("Ouachita") and leased the Facility from MSC. A copy of the Hospital Facility Lease whereby Ouachita leased the Facility from MSC is attached hereto as Exhibit B (the "Hospital Facility Lease").

11. The Hospital Facility Lease required that the Hot Springs Doctors personally guaranty the obligations of Ouachita (the corporation they owned and controlled). Upon information and belief the Hot Springs Doctors executed personal guaranties (collectively the "Guaranties"). Billig and Ferry do not have access to all the Guaranties, but do have one Guaranty executed by Dr. Ron Kaler, a copy of which is attached hereto as Exhibit C.

12. Ouachita did not perform its obligations under the Hospital Facility Lease, and the Hot Springs Doctors did not cause Ouachita to perform its obligations. The Hot Springs Doctors

did not perform their obligations under the Guaranties. MSC, which was controlled by the Hot Springs Doctors, did not take any action against the Hot Springs Doctors to enforce the terms and provisions of the Hospital Facility Lease or the Guaranties. In other words, the Hot Springs Doctors used their membership interests in MSC to avoid paying the debt they owed to MSC.

13. The failure of the Hot Springs Doctors to pay or require payment from themselves harmed Billig and Ferry by diminishing the value of MSC and reducing the income of MSC.

## Self-Dealing Related To HSIM And Health First

14. In addition to the Hospital Facility Lease, a portion of the Facility was leased to a sub-group of the Hot Springs Doctors. This sub-group of the Hot Springs Doctors formed Hot Springs Internal Medicine, P.A. ("HSIM") and leased 6,758 square feet of the Facility pursuant to a Clinic Facility Lease with MSC (the "HSIM Lease"). A copy of the HSIM Lease is attached hereto as Exhibit D. The HSIM Lease had a term of 30 years.

15. As shown on Exhibit D, the Hot Springs Doctors that owned HSIM executed personal guaranties of the obligations of HSIM under the HSIM Lease (collectively the "HSIM Guaranties").

16. HSIM did not perform its obligations under the HSIM Lease, and the Hot Springs Doctors that were owners of HSIM did not cause HSIM to perform its obligations. The Hot Springs Doctors that were owners of HSIM did not perform their obligations under the HSIM Guaranties. MSC, which was controlled by the Hot Springs Doctors, did not take any action to enforce the HSIM Lease or the HSIM Guaranties. In other words, the Hot Springs Doctors used their membership interests in MSC to avoid paying the debt they owed to MSC.

17. Instead of enforcing the HSIM Lease and the HSIM Guaranties, the Hot Springs Doctors caused MSC to allow HSIM to terminate the HSIM Lease after 3 years of the 30 year

178222v2         4

term. In conjunction therewith, the Hot Springs Doctors caused MSC to enter into a new lease (the "Health First Lease") with Health First Physicians of Arkansas, P.A. ("Health First"). Health First is an entity owned or controlled by some of the Hot Springs Doctors. The Health First Lease did not have any personal guaranties from any of the Hot Springs Doctors, and was for a one year term. A copy of the Health First Lease is attached hereto as Exhibit E.

18. Then, after causing MSC to terminate the HSIM Lease and enter into the Health First Lease on terms favorable to themselves, the Hot Springs Doctors caused the rental under the Heath First Lease to be retroactively reduced.

19. The failure of the Hot Springs Doctors to require payment from themselves and the manipulation of their own lease obligations harmed Billig and Ferry by diminishing the value of MSC and reducing the income of MSC.

### Self-Dealing Related To Shell Space

20. At the time of construction of the Facility, approximately 4,000 square feet of the building was not included in any lease and was left as uncompleted shell space (the "Shell Space"). The Hot Springs Doctors subsequently decided to complete the Shell Space and use it as administrative offices and therapy spaces.

21. In connection with completion of the Shell Space, MSC would have paid up to $100,000 to complete the Shell Space, and the tenant of the Shell Space would have paid the balance of the costs to complete the Shell Space. Upon information and belief, the Hot Springs Doctors caused MSC to pay the entire cost of completing the Shell Space (which was in excess of $100,000). The Shell Space was then used by the Hot Springs Doctors, and upon information and belief neither the Hot Springs Doctors nor Ouachita (their corporation) paid to complete the

Shell Space. In addition, neither the Hot Springs Doctors nor Ouachita have paid rent for the full area of the Shell Space.

22. MSC, which is controlled by the Hot Springs Doctors, has not taken any action against the Hot Springs Doctors or Ouachita to collect or recover the costs of completing the Shell Space or the full rental due for the Shell Space. In other words, the Hot Springs Doctors used their membership interests in MSC to avoid paying the debt they owed to MSC.

23. The failure of the Hot Springs Doctors to pay or require payment from themselves harmed Billig and Ferry by diminishing the value of MSC and reducing the income of MSC.

### Self-Dealing Related To Parking

24. The Facility, as originally contemplated, had 115 parking spaces. The Facility, as eventually constructed, had 183 parking spaces.

25. These additional parking spaces are used and enjoyed by the Hot Springs Doctors and entities owned or controlled by them. On information and belief, MSC paid for construction of the additional parking spaces and neither the Hot Springs Doctors, Ouachita, Health First or HSIM paid any increased rental for the additional parking spaces.

26. MSC, which is controlled by the Hot Springs Doctors, has not taken any action to recoup the cost of the parking spaces or rental related thereto. In other words, the Hot Springs Doctors used their membership interests in MSC to avoid paying for constructing or leasing the additional parking spaces.

27. The failure of the Hot Springs Doctors to pay or require payment from themselves harmed Billig and Ferry by diminishing the value of MSC and reducing the income of MSC.

## Self-Dealing Related To Sale
## Of MSC Assets

28. Eventually, the Hot Springs Doctors decided to sell the assets of MSC. Previously, an appraisal had been obtained for the purpose of estimating MSC's market value and for use in connection with internal planning and potential buyouts. After reviewing the appraisal Billig informed MSC that the appraiser had been provided with incorrect square footage and rental information, which further depressed the value of the Facility. Nevertheless, the Hot Springs Doctors caused MSC to sell the Facility for the amount set forth in the faulty appraisal.

29. On or about October 11, 2007, the Facility was sold to HSAR MED, LP ("HSAR"). Upon information and belief, HSAR is an entity related to the Cirrus Group LLC ("Cirrus"). The exact relationships among HSAR, Cirrus and the Hot Springs Doctors are not known at this time and may be the subject of additional claims, counts and causes of action.

30. In any event, in connection with the sale the proceeds received by MSC were reduced by $73,615.07, which sum represented real estate taxes which the Hot Springs Doctors were obligated to pay and did not pay under the Hospital Facility Lease. Such reduction is shown on the closing statement attached hereto as Exhibit F (the "Closing Statement").

31. In addition, as part of the sale the Hot Springs Doctors entered into a Commercial Property Earnest Money Contract (the "Contract"). Billig and Ferry do not have a signed copy of the Contract, but on information and belief a copy of the Contract actually signed is attached hereto as Exhibit G. In the Contract, the Hot Springs Doctors assigned leases to HSAR in an attempt to insulate themselves and the companies they own and control from action by MSC to collect the rentals and other sums owed by the Hot Springs Doctors to MSC under the Hospital Facility Lease, the HSIM Lease and the Health First Lease. Upon information and belief, after the sale of the Facility the lease obligations of the Hot Springs Doctors were terminated and the

Hot Springs Doctors entered into more favorable arrangements with Cirrus or its affiliates. In other words, the Hot Springs Doctors used their membership interests in MSC to avoid paying the debt they owed MSC and to manipulate the sale price of the assets of MSC.

32.  The failure of the Hot Springs Doctors to pay or require payment from themselves and the manipulation of the sale price of the Facility harmed Billig and Ferry by diminishing the value of MSC and reducing the income of MSC.

## Damages

33.  The Hot Springs Doctors are liable for rental, late fees, property taxes, interest, triple net expenses and other sums due under the Hospital Facility Lease, the HSIM Lease and the Health First Lease. Billig and Ferry do not have access to the records necessary to compute the exact sums due, but upon information and belief allege the amount to be approximately $3,000,000.00. Billig is entitled to 15% of all sums due and Ferry is entitled to 15% of all sums due.

34.  The Hot Springs Doctors are liable for costs of completion of the Shell Space in an amount to be determined at trial. Billig and Ferry do not have access to the records necessary to compute the exact sums due, but upon information and belief allege the amount to be approximately $100,000.00. Billig is entitled to 15% of all sums due and Ferry is entitled to 15% of all sums due.

35.  The Hot Springs Doctors are liable for the cost of construction of the additional parking spaces in an amount to be determined at trial. Billig and Ferry do not have access to the records necessary to compute the exact amount. Billig and Ferry are each entitled to 15% of the sum due.

36. The Hot Springs Doctors are liable for the difference in the fair value of MSC's assets and the actual sale price of those assets, the exact amount to be determined at trial. Billig and Ferry are each entitled to 15% of such amount.

37. MSC has no assets and has ceased to do business. An act of dissolution has occurred with respect to MSC.

38. Billig and Ferry reserve the right to plead further after discovery and identification of all self-dealing by the Hot Springs Doctors.

### Violation Of The Arkansas Limited Liability Company Act

39. Paragraphs 1 through 38 above are restated.

40. The actions of the Hot Springs Doctors constitute violation of the Small Business Entity Tax Pass Through Act codified at ARK. CODE ANN. § 4-32-101 *et. seq.*, including, without limitation, § 4-32-402(2). Billig and Ferry are alleging violation of Arkansas statutory law.

### Breach Of Duties, Oppression, Usurpation And Squeeze-Out

41. Paragraphs 1 through 40 above are restated.

42. The actions of the Hot Springs Doctors constitute breach of fiduciary and other duties they owe to Billig and Ferry as members of MSC, and also violate common law prohibitions against oppression of minority members, usurpation of corporate opportunities and assets, and squeeze-out of minority members. Billig and Ferry are alleging violation of Arkansas common law.

### Violation Of DTPA

43. Paragraphs 1 through 42 above are restated.

44. The actions of the Hot Springs Doctors constitute violation of the Arkansas Deceptive Trade Practices Act, codified at ARK. CODE ANN. § 4-88-101 *et. seq.* including, without limitation, § 4-88-107(10). Billig and Ferry are alleging violation of Arkansas statutory law.

### Dissolution And Enforcement Of Guaranties

45. Paragraphs 1 through 44 above are restated.

46. This Court should order the dissolution of MSC, with all assets of MSC, including, without limitation, the liability of the Hot Springs Doctors under the Guaranties and the HSIM Guaranties distributed to the members in proportion to their membership interests.

47. Upon such dissolution and distribution, the Hot Springs Doctors are liable to Billig for 15%, and to Ferry for 15%, of all sums due under the Guaranties and the HSIM Guaranties.

### Jury Trial

48. Billig and Ferry request a jury trial.

WHEREFORE, Billig and Ferry pray for:

(a) judgment jointly and severally against the Hot Springs Doctors for the amounts set forth herein;

(b) pre-judgment interest;

(c) costs and attorney fees;

(d) dissolution of MSC; and

(e) all other relief to which they may be entitled.

178222v2

10

Respectfully submitted,

ROSE LAW FIRM
120 East 4th Street
Little Rock, AR 72201
(501) 375-9131

By: _____
Garland J. Garrett, ABA 80050

By: _____
Richard T. Donovan, ABA 83054

*Attorneys for Plaintiffs*